IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PEI CHUANG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| OD EXPENSE, LLC, REGENERATION | ) Civ. No. 1:16-cv-00915-RGA |
| CAPITAL GROUP, LLC, ALTBACHCO, LLC, | ) |
| and RICHARD KAUFMAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM ORDER

Pending before the Court is Defendants' motion to compel arbitration and stay this action. (D.I. 11). Plaintiff opposes arbitration. (D.I. 14). For the reasons set forth below, Defendants' motion is DENIED.

## BACKGROUND

Plaintiff Pei Chuang entered into two separate agreements in connection with what he believed was the purchase of pre-initial public offering shares in the Chinese company OD Dragon Corporation ("OD Dragon"). (D.I. 1 at ¶¶ 20-21). In actuality, Plaintiff obtained shares in a different company, OD Expense, LLC ("OD Expense"). (*Id.* at ¶ 24). OD Expense was created to raise funds to pay off Defendant Regeneration Capital Group, LLC's ("RCG") pre-existing expense obligations to OD Dragon. (*Id.* at ¶¶ 34-35). Plaintiff's ownership interest in OD Expense only allowed him to receive shares in OD Dragon upon a successful initial public offering ("IPO") of OD Dragon. (*Id.*).

1

The first agreement, a Class C Membership Interest Subscription Agreement (the "Subscription Agreement"), was executed on October 10, 2013 between Plaintiff and Defendant Richard Kaufman, acting on behalf of Defendant OD Expense. (D.I. 1-3 at 4). The Subscription Agreement provided for the issuance of 796 shares in OD Expense for an aggregate price of $398,000. (*Id.*). Attached to the Subscription Agreement was the Operating Agreement of OD Expense (the "Operating Agreement"). (D.I. 1-3 at 5). The second agreement, a Supply of Consulting Services Agreement (the "Supply Agreement"), was executed on October 10, 2013 between Plaintiff and Kaufman, acting on behalf of non-party Regeneration Capital Group LLC Shanghai Office ("Regeneration Shanghai"). (D.I. 1-4 at 13). Pursuant to the Supply Agreement, Regeneration Shanghai was to provide Plaintiff with "comprehensive investment consulting services . . . for the purpose of conducting due diligence on potential investments in Chinese businesses." (*Id.* at 3).

After the agreements were executed, Plaintiff wired $100,000 to OD Expense pursuant to the terms of the Subscription Agreement. (D.I. 12 at 5). Plaintiff also wired within China 1,822,737 renminbi, which was the equivalent of $298,000, to Regeneration Shanghai pursuant to the terms of the Supply Agreement. (*Id.*). Following these transfers, Plaintiff received updates on the status of the potential IPO, but was ultimately informed that there would be no IPO. (D.I. 1 at ¶¶ 39-41). On July 3, 2014, Plaintiff sought a refund of his investment. (*Id.* at ¶ 44). Kaufman stated that a refund was not possible at that time, and on September 21, 2016, Plaintiff learned that OD Expense had spent all of his money on due diligence. (*Id.* at ¶¶ 44, 49). Plaintiff then commenced this action on October 7, 2016 against the named defendants seeking to recover $398,000. (D.I. 1). In response, Defendants filed a motion to compel arbitration and stay this action pending the outcome of those arbitrations. (D.I. 11).

2

At issue are the arbitration clauses contained in the Operating Agreement and the Supply
Agreement. Section 11.10 of the Operating Agreement states, "Except as otherwise provided in
this Agreement, any dispute arising out of this Agreement shall be submitted to the American
Arbitration Association for resolution. The arbitration shall be scheduled to take place in New
York, New York . . . ." (D.I. 1-3 at 20). Section 19 of the Supply Agreement requires good faith
negotiation between the parties to resolve disputes arising in connection with the Supply
Agreement, and further states, "If both parties fail to settle the dispute through such negotiation,
either party may submit the dispute to China International Economic and Trade Arbitration
Commission, Shanghai Sub-commission ("CIETAC") for arbitration in Shanghai in accordance
with its rules and regulations then effective." (D.I. 1-4 at 11).

Defendants argue that both of these provisions mandate arbitration of the dispute.

## DISCUSSION

Neither the Operating Agreement nor the Supply Agreement mandate arbitration between
Plaintiff and the named Defendants.

First, the arbitration provision in Section 11.10 of the Operating Agreement is ambiguous
and therefore cannot be enforced as written. The Third Circuit has held that arbitration clauses
must be clear and unequivocal in order to force parties to arbitrate their disputes. *See Sandvik AB
v. Advent Int'l Corp.*, 220 F.3d 99, 106 (3d Cir. 2000) (quoting *Par-Knit Mills, Inc. v.
Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980) ("Before a party to a lawsuit can be
ordered to arbitrate and thus be deprived of a day in court, there should be an express,
unequivocal agreement to that effect.")).

Defendants argue that Section 11.10 mandates arbitration as the exclusive means of
dispute resolution. (D.I. 12 at 14-15). Section 11.10 of the Operating Agreement, however,

3

states, *"Except as otherwise provided in this Agreement*, any dispute arising out of this

Agreement shall be submitted to the American Arbitration Association for resolution." (D.I. 1-3

at 20) (emphasis added). Defendants have not offered a convincing explanation for the italicized

qualifying language. Plaintiff points to the jurisdiction and venue clause of Section 11.8 as the

exception referenced in Section 11.10, arguing that the Operating Agreement intended to allow

parties to litigate in Delaware.[1] (D.I. 14 at 11-12). This is a reasonable interpretation of the

qualifying language in Section 11.10. Defendants assert that Section 11.8 does not mandate all

disputes be heard in the courts of Delaware, but instead specifies where motions relating to

enforcing or vacating arbitration decisions should be filed. (D.I. 12 at 15). Defendants, however,

drafted the Operating Agreement, and had they wanted this interpretation to govern, they should

have specifically stated in the Operating Agreement that Section 11.8 applies only to

enforcement of arbitration decisions. Instead, Defendants phrased Section 11.8 to apply to "any

action arising out of a dispute under or in connection with this Agreement." (D.I. 1-3 at 20).

Section 11.8 makes no reference to the arbitration clause in Section 11.10. If it were to be so

limited as Defendants suggest, it might be expected that it would say so.

Second, the arbitration clause in the Supply Agreement does not cover these Defendants.

The arbitration provision in Section 19 of the Supply Agreement is clear by its terms; however, it

cannot be enforced because Regeneration Shanghai is not a party to this litigation and Kaufman's

relationship to Regeneration Shanghai is unclear. Defendants assert that even though none of

them are signatories to the Supply Agreement, they may compel arbitration because Kaufman

---

[1] Section 11.8 of the Operating Agreement states, "Each Member agrees to submit to the exclusive jurisdiction of the federal and state courts of the State of Delaware *in any action arising out of a dispute under or in connection with this Agreement* or any transaction contemplated by this Agreement." (D.I. 1-3 at 20) (emphasis added).

4

acted as an agent of Regeneration Shanghai when he signed the Supply Agreement on its behalf. (D.I. 15 at 9). Other than the signature page of the Supply Agreement, though, Defendants present no evidence of an agency relationship between Kaufmann and Regeneration Shanghai, and no evidence at all of any relationship between the other Defendants and Regeneration Shanghai.

Defendants also argue they have standing to enforce the arbitration provision in Section 19 because the Supply Agreement was incorporated by reference into the Subscription Agreement, which OD Expense signed. (*Id.*). This argument is unpersuasive because the Supply Agreement was only referenced in the recitals portion of the Subscription Agreement and the Subscription Agreement lacked an incorporation by reference clause.[2] Although the Third Circuit in *Standard Bent Glass Corp. v. Glassrobots Oy* permitted incorporation by reference in the absence of an express incorporation by reference clause, that case is distinguishable on its facts because the intent to incorporate by reference was clear. 333 F.3d 440 (3d Cir. 2003). In *Standard Bent Glass*, the agreement between the parties stated that "matter[s] shall be submitted to arbitration as set out later in this Agreement." *Id.* at 447. The agreement then specified that the document containing the arbitration clause would apply "[a]s to the other conditions" in the agreement. *Id.* Additionally, the document containing the arbitration clause was listed as one of the appendices to the agreement. *Id.* Unlike the agreement in *Standard Bent Glass*, the Subscription Agreement in this case did not expressly or implicitly incorporate the Supply Agreement by reference.

---

[2] Paragraph three of the Subscription Agreement states, "WHEREAS, the Subscriber has entered into a consulting agreement (the "Supply of Consulting Services Agreement") with Regeneration Capital Group LLC Shanghai Office for due diligence and other financial consulting services." (D.I. 1-3 at 2).

5

## CONCLUSION

For the aforementioned reasons, Defendants' motion to compel arbitration and stay this

action pending the outcome of those arbitrations (D.I. 11) is **DENIED**.

IT IS SO ORDERED this $\frac{22}{}$ day of March, 2017.

United States District Judge

6